Benj. Barfield, administrator, *de bonis non*, of Winifred Barfield, deceased, plaintiff in error, vs. William V. King, and others, defendants in error.

To a bill filed by an administrator to recover assets, the defendants  set up the statute of limitations.   The complainant insisted, that the defendants held by fraud; the defendants met that reply, by insisting, that the *heirs* had notice of the fraud, for the statutory  period, before the suit.   The Court charged, that if the heirs had such notice, the administrator was barred.

*Held*, That, as there might have been debts to be paid, by the administrator, and, as, the heirs might have been persons laboring under disabilities to sue, the charge was erroneous.

In Equity, from Spalding  County.   Tried before Judge Bull, at May Term, 1859.

This was a bill filed by  Benjamin Barfield, administrator *de bonis non*, of Winifred Barfield, deceased, against William V. King, Milly Barfield and Sarah Barfield.

The bill states, in substance, that said Winifred Barfield, in her lifetime, drew  a lot of land in originally Muscogee, now Harris county; and about 1829, she agreed to sell the same to one Noel Matthews, and sent her son, Samuel Barfield, to consummate said sale, and that he received for said land, a negro woman Sophia, and her child Sawney, and the sum of two hundred dollars in money.   That at that time, the said Samuel and his brother, John Barfield, and his sisters, the said Milly and Sarah, all lived with their mother, the

Barfield, adm'r, vs. King et al.

said Winifred, and said negroes were brought by Samuel to his mother's, where they remained until her death, about the year 1830.

The bill further charges, that said Samuel fraudulently took the bill of sale for said negroes to himself and in his name, and which he concealed from his mother during her life; that she was illiterate, unable to read or write, but always claimed the negroes, and had the possession and control of them as long as she lived, and her right and title was fully recognized and admitted by said Samuel.

The bill further states, that after the death of said Winifred, one Asa Sessions, her son-in-law, became her administrator, but failed to claim or administer said negroes as part of her estate, but allowed said Samuel to take and hold the same as his own. And the bill charges, that there was, in the opinion of complainant, a fraudulent and corrupt understanding and collusion between said Asa and said Samuel in reference to said negroes. That said Asa closed up said administration in a very short time, and obtained letters of dismission therefrom, and soon thereafter became insolvent; and since his death, his children have received considerable amounts of money or other things of value from said Samuel.

The bill further charges, that after the death of said Winifred, the said Samuel claimed and held said negroes under said fraudulent bill of sale, and that the defendants, Milly and Sarah Barfield, were cognizant of said fraudulent claim and concealment.

The bill further states, that Samuel Barfield died in the year 1852 or 1853, and said negroes and their increase came into the possession of the defendants, William V. King, Milly Barfield and Sarah Barfield, who have held the same ever since; that said negroes and their increase now number about fifteen. That defendant, King, was appointed the executor of said Samuel, who left a will devising and bequeathing all his estate to said Milly and Sarah, his single sisters.

The bill further states, that in 1853, complainant com-
menced his action of trover against the defendants, for the
recovery of said negroes, to which action defendants pleaded
the statute of limitations, and complainant avers that he is
unable at law to overcome said plea, and can sustain and
establish his claim only in and by the aid of a Court of Equi-
ty, by reason of the fraudulent concealment aforesaid, and
the minority of many of the parties, beneficially interested at
the time of Winifred Barfield's death, &c.; and that neither
complainant, nor those represented by him as administrator
aforesaid, had any notice or knowledge of the title of said
Winifred, in and to said negroes, or of the fraudulent prac-
tices, acts and concealments aforesaid, until a short time be-
fore the commencement of said action of trover.

The prayer of the bill is, that defendants be decreed to de-
liver up said slaves, and to account for their hire, that the
same may be administered as the estate of said Winifred, and
distributed according to law.

Defendants answered the bill, denying all its material al-
legations, and further relied upon the statute of limitations.

The bill was subsequently amended, alleging that in the
year 1853, complainant and one Nathaniel H. King filed
their bill against defendants, concerning said negroes, and
prayed for a writ of *ne exeat*, which bill was sanctioned, and
a *ne exeat* issued. Afterwards, a motion was made to dis-
charge said writ, and upon the hearing thereof, at chambers,
before Judge STARK, defendant, William V. King, offered in
evidence a certain forged deed, purporting to have been exe-
cuted by Winifred Barfield to Samuel Barfield, for the lot of
land drawn by her in Muscogee county, bearing date 7th
January, 1828, and witnessed by Uriah Askew and Joseph
Boggs; that said deed was afterwards examined and inspec-
ted by his counsel and then delivered to defendant, King,
who promised to record the same, which he has never done,
and which he has now in his custody or control, and com-
plainant prays he may answer fully concerning the same

Barfield, adm'r, vs. King et al.

During the trial, complainant proposed to prove by *David H. Martin* and *Gilbert J. Green*, his counsel in the cause, that the original writ of *ne exeat*, mentioned in the bill, was lost, and that the copy offered in evidence was a true copy of said original; and that the answers of William V. King, with the exhibits thereto attached to said bill, were lost, and no copy thereof was in existence. And also, to prove that at the trial before Judge STARK, King, the defendant, produced and exhibited the deed mentioned in the amendment to complainants' bill, and which deed said defendant, in his answer to the amendment, and in his answer to the notice to produce the same to be used in the trial, denied having produced at the hearing at chambers before Judge STARK. Defendant objected to the competency of these gentlemen as witnesses, upon the ground that they came to the knowledge of the facts proposed to be proven, by reason of and pending their relation as attorneys; and therefore, excluded by Act of 1850. The Court sustained the objection and excluded the witnesses, and complainant excepted.

At the conclusion of the testimony, the Court charged the jury, amongst other things, that if the heirs of Winifred Barfield had notice of the facts and circumstances which are relied on to show fraud, then the statute of limitations commenced to run against them from the time of such notice. That it is a general principle that, in cases of fraud, the statute does not commence running until the discovery of fraud. If the distributees of Winifred Barfield were defrauded by Samuel Barfield, and the circumstances constituting the fraud were concealed from them, or not discovered by them, then the statute would not run against them until the discovery; and in order to determine this question, it was proper to consider the circumstances as disclosed by the evidence; the age of the parties; their remoteness from or proximity to the scene of the transactions; the nature of the transactions— that if they, the heirs, or Sessions, the administrator of Mrs. Barfield, were acquainted with the facts and circumstances,

and Sessions suffered the statutory period to elapse without bringing suit, then he and his successors in administration are barred, &c. To which charge complainant excepted.

The jury found and decreed for the defendants. Whereupon complainant moved for a new trial on the following grounds:

1st. Because the verdict was contrary to the evidence and the weight of evidence.

2d. Because the Court erred in rejecting the testimony of Martin and Green, counsel for complainant.

3d. Because the Court erred in its charge to the jury.

The Court overruled the motion for a new trial, and complainant excepted.

MARTIN; GREEN; and GIBSON, for plaintiff in error.

ALFORD; DOYAL; and PEEPLES & CABANISS, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

All the questions in the case, are included in the motion for a new trial. We may, therefore, confine ourselves to that motion.

The Court overruled that motion; was the Court right in doing so?

The grounds of the motion were three; of which it is not necessary to consider the first.

The second was, the rejection " of the testimony of Martin and Green, counsel for complainant."

We think it clear, that the facts sought to be proved by these gentlemen, came to their knowledge, during the existence of the relationship of client and attorney, between them and the complainants in the *ne exeat* suit, and, by reason of that relationship. And the statute says, that " it shall not be lawful for any attorney at law, or in equity," " to give testimony" of such facts. *Cobb Dig.* 280.

The Court, then, was, we think, right in excluding these two gentlemen as witnesses.

The third ground of the motion, was the charge of the Court.

A part only of the charge was objected to, in this Court; the part which says, "that if the *heirs* of Winifred Barfield, had notice of the facts of the fraud, the statute of limitations, commenced running against them, from the time of such notice.

It is probable, that the impression, which this part of the charge made on the jury, and which it was the Court's intention, that it should make on them, was, that notice of the fraud, to the heirs, was notice of it, to the administrator, and therefore, that, if there had been four years notice of the fraud to them, the suit, althought not a suit by them, but by the administrator, was barred.

Was this a proper impression to be made on the jury? We think not. It may be that there were debts to pay. If there were, the administrator was entitled to have the assets, to pay the debts, even although he might not be entitled to them, to distribute to the next of kin. The negligence of the next of kin, might affect their own rights, but it could not affect the rights of the creditors. Indeed, if there were creditors, would mere inaction in the next of kin, be at all prejudicial to them—they having the right to no part of the assets, except such as might remain, after the payment of the debts? If, then, there were debts, notice of the fraud to the next of kin, was not sufficient to bar the right of the administrator. And it is not alleged, or proved, that there were no debts.

For this reason, then, this part of the charge, was, we think, erroneous.

It was amiss, we think, for another reason. It does not appear, who the heirs were; it is not alleged in the answer, or proved by the evidence, who they were. It may be, therefore, that they, or some of them, were persons laboring under some of the disabilities to sue, mentioned in the statute of limitations. If they were, those statutes would not begin to run

against them, even though they had notice of the fraud, until the removal of such disabilities. Yet the charge is absolute and general, and therefore, is a charge as much covering the case of heirs laboring under disabilities, as, the case of heirs not laboring under disabilities.

For these reasons, then we think, that this, the third ground of the motion, was good.

Judgment reversed.